UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------
PATRICIA C.R.,

                Plaintiff,       <u>DECISION AND ORDER</u>
                                         7:23-CV-00129-GRJ

     v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In July of 2020, Plaintiff Patricia C.R.[1] applied for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications. Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 9).

This case was referred to the undersigned on December 6, 2023. Presently pending is Plaintiff's Motion for Judgment on the Pleadings under

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 14). For the following reasons, Plaintiff's motion is due to be denied and this case is dismissed.

## I.  BACKGROUND

### A.  *Administrative Proceedings*

Plaintiff applied for benefits on July 22, 2020, alleging disability beginning April 20, 2015. (T at 111, 183, 184).[2]  Plaintiff's applications were denied initially and on reconsideration.  She requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on December 9, 2021, before ALJ Gitel Reich. (T at 125-57). Plaintiff appeared with an attorney and testified. (T at 131-49). The ALJ also received testimony from Julian Shields, a vocational expert. (T at 150-55).  During the hearing, Plaintiff amended her alleged onset date to August 25, 2018. (T at 130-31).

### B.  *ALJ's Decision*

On January 27, 2022, the ALJ issued a decision denying the applications for benefits. (T at 108-24).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 25, 2018 (the amended alleged onset date) and met the insured status requirements of the Social Security Act through June 30, 2019 (the date last insured). (T at 113).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 10.

The ALJ concluded that Plaintiff's lumbar and cervical disc disorder (status post-lumbar discectomy, status post-anterior cervical discectomy and fusion), asthma, sleep apnea, gastroesophageal reflux disease (GERD), and obesity were severe impairments as defined under the Act. (T at 114).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 115).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 CFR 404.1567 (a), with the following limitations: she can lift/carry and push/pull 10 pounds occasionally and less than 10 pounds frequently; sit for 6 hours and stand/walk for approximately 2 hours in an 8-hour workday; tolerate occasional exposure to respiratory irritants; must be allowed to have off-task behavior for five minutes per hour; and is limited to simple and routine work. (T at 116).

The ALJ concluded that Plaintiff could not perform her past relevant work as a preschool teacher. (T at 119).

However, considering Plaintiff's age (30 on the amended alleged onset date), education (at least high school), work experience, and RFC,

3

the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 119).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between August 25, 2018 (the amended alleged onset date) and January 27, 2022 (the date of the ALJ's decision). (T at 120).

On November 22, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-7).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on January 6, 2023. (Docket No. 1).  On July 10, 2023, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 14, 15).  The Commissioner interposed a brief in opposition on August 17, 2023. (Docket No. 16).

## II.  APPLICABLE LAW

A.    *Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial

4

evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.      *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
>
> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises three primary arguments in support of her request for reversal of the Commissioner's decision.

First, she argues that the Appeals Council erred by refusing to grant review based on additional medical evidence that post-dated the ALJ's decision.  Second, Plaintiff asserts that the ALJ's assessment of the medical opinion evidence was flawed.  Third, she contends that the hypotheticals presented to the vocational expert at step five did not include all her limitations.  This Court will address each argument in turn.

*A.    Additional Evidence*

At the administrative hearing held on December 9, 2021, Plaintiff testified that she was "constantly in the bathroom" and had difficulty controlling her bowel movements. (T at 140).  She explained that she was scheduled for an endoscopy and colonoscopy. (T at 140).

In the decision issued on January 27, 2022, the ALJ referenced this testimony, but (i) noted that Plaintiff did not seek consistent treatment for her gastrointestinal issues, (ii) read the record as documenting "random and intermittent" complaints, and (iii) concluded that the "evidence [did] not document abdominal issues" as severe or frequent as Plaintiff alleged. (T at 118).

Plaintiff underwent a colonoscopy in February of 2022, which described her as suffering from "mild systemic disease." (T at 89).  The colonoscopy revealed mucosal ulceration, friability with contact bleeding, and diffuse severe inflammation secondary to colitis. (T at 90).  Plaintiff was diagnosed with an ulcer of her intestine, gastrointestinal hemorrhage (unspecified), noninfective gastroenteritis and colitis (unspecified), and diarrhea (unspecified). (T at 90-91).

An MRI of the abdomen and pelvis performed in the same month indicated acute pancolitis/proctitis, chronic colitis, no active inflammatory

bowel disease, no small bowel obstruction, and no abdominal abscess or fistula. (T at 96).

Plaintiff began treating with Dr. Abhik Bhattacharya, a gastroenterologist, on February 8, 2022.

Dr. Bhattacharya reported that Plaintiff started having diarrhea and bleeding more than 10 times per day in 2019 and had been experiencing severe diarrhea since, along with severe abdominal pain. (T at 103). He described Plaintiff as "extremely symptomatic and … unable to manage symptoms at home." (T at 106).  Dr. Bhattacharya recommended that Plaintiff be immediately admitted to the hospital for treatment. (T at 106-107).

Plaintiff was hospitalized from February 8, 2022, through February 17, 2022.  A discharge summary described Plaintiff as suffering from a flare-up of recently diagnosed ulcerative pancolitis.  (T at 27).  Plaintiff responded to IV steroid treatment and was stable upon discharge. (T at 27).  The discharge note described Plaintiff as having a "2 year history of frequent, bloody stools accompanied by diffuse crampy abdominal pain." (T at 30).  Plaintiff was described as "doing well" with medication management. (T at 31).

Plaintiff provided the Appeals Council with the records of her colonoscopy, MRI, treatment with Dr. Bhattacharya, and hospitalization. (T at 11-107).

The Appeals Council declined review as the records post-dated the ALJ's decision and, thus, "does not relate to the period at issue." (T at 2).

The Appeals Council is obliged to grant review based on additional evidence if the evidence is new and material, there is a reasonable probability that it would change the outcome of the decision, and the claimant shows good cause for not submitting, or informing the agency about, the evidence before the ALJ issued a decision. 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).

Here, good cause is established as the evidence at issue post-dates the ALJ's decision and, thus, could not have been provided prior to the decision.

Thus, the question for this Court is whether substantial evidence supports the ALJ's decision, even considering the additional evidence. *See Perez v. Chater*, 77 F. 3d 41, 46 (2d Cir. 1996)( "When the Appeals Council denies review after considering new evidence, we simply review the entire administrative record, which includes the new evidence, and determine, as

in every case, whether there is substantial evidence to support the decision of the Secretary").

As noted above, the ALJ highlighted that Plaintiff did not seek consistent treatment for her gastrointestinal issues during the time period in question, read the record as documenting "random and intermittent" complaints, and concluded that the "evidence [did] not document abdominal issues" as severe or frequent as Plaintiff alleged. (T at 118).

Although it cannot be reasonably doubted that the gastrointestinal conditions identified in February of 2022 pre-dated the ALJ's decision, the question is not whether Plaintiff suffered from gastrointestinal problems during the period at issue, but whether substantial evidence supports the ALJ's conclusion that those problems were random, intermittent, or otherwise insufficiently severe to interfere with Plaintiff's ability to perform the range of work described in the RFC determination.  The Court concludes that substantial evidence does support this determination.

Plaintiff only saw medical providers four times for gastrointestinal problems between August 25, 2018 (the amended alleged onset date) and January 27, 2022 (the date of the ALJ's decision). (T at 623-26, 1342-43, 1427-31, 1460-65).

She was hospitalized in December of 2019 with "intermittent bloody diarrhea, generalized weakness, and subjective fevers with cough/congestion/rhinorrhea." (T at 625).  Upon discharge, she was described as "significant(ly) improved" and was advised to follow-up with her primary care physician. (T at 625).

In January of 2021, Plaintiff complained of having diarrhea "for some weeks," which "resolves spontaneously." (T at 1342). Routine follow-up was recommended. (T at 1343).  A treatment record from July of 2021 described Plaintiff as having persistent diarrhea. (T at 1427).  Follow-up with a GI specialist regarding the possibility of irritable bowel syndrome was recommended. (T at 1429).

A treatment notation from October of 2021 reports that Plaintiff continued to suffer from persistent diarrhea. (T at 1460).  Plaintiff was using Proton pump inhibitors (PPIs), which "helps." (T at 1461).  She denied loss of appetite or weight loss and was described as well-nourished, well-hydrated, and in no acute distress. (T at 1462).  A gastroenterology consult was recommended. (T at 1464).

The Court finds the ALJ's conclusion that Plaintiff's gastrointestinal symptoms were intermittent and generally well-controlled during the time period in question supported by a reasonable reading of the record. *See*

*Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)("The

substantial evidence standard means once an ALJ finds facts, [a court] can

reject those facts only if a reasonable factfinder would *have to conclude*

*otherwise*.")(emphasis in original) (citation and internal quotation marks

omitted); *see also McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If

evidence is susceptible to more than one rational interpretation, the

Commissioner's conclusion must be upheld.")(citation omitted).

The fact that Plaintiff was diagnosed with ulcerative pancolitis and

experienced a severe flare-up of that condition after the ALJ's decision

does not create a reasonable probability that the ALJ would have reached

a different conclusion regarding the impact of that condition on Plaintiff's

RFC during the time period at issue.[3]

B.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical

opinion in determining whether a claimant is disabled under the [Social

Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013

---

[3] Plaintiff also points to a reference in the additional evidence regarding her use of a cane to walk. (T at 103). The ALJ cited the lack of evidence that Plaintiff needed an assistive device to walk. (T at 116). However, there is no evidence that a medical provider prescribed a cane during the period at issue. The fact that a claimant is described as using a cane, without more, is insufficient to establish that the device is medically necessary for disability purposes. *See Podolsky v. Colvin*, No. 12 CIV. 6544 RA JLC, 2013 WL 5372536, at *16 (S.D.N.Y. Sept. 26, 2013).

WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence

from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

In the present case, Plaintiff challenges the ALJ's assessment of the medical opinion evidence regarding her physical and mental limitations. This Court will discuss each in turn.

### 1.   *Physical Limitations*

Dr. Silvia Aguiar performed a consultative examination in January of 2021.  She diagnosed asthma, history of obstructive sleep apnea, neck pain status post cervical spine surgery, and lower back pain status post lumbar spine surgery. (T at 1335).  Dr. Aguiar opined that Plaintiff had mild to moderate limitations with respect to bending, heavy lifting and carrying, prolonged standing, prolonged walking, and prolonged sitting. (T at 1335).

She recommended that Plaintiff avoid respiratory irritants and positional activities that require balance. (T at 1335).

The ALJ found Dr. Aguiar's opinion "generally" persuasive but concluded that the physician overstated Plaintiff's limitation with respect to sitting for prolonged periods. (T at 118).  This conclusion is supported by substantial evidence.

The ALJ's conclusion is supported by a thorough review and summary of the treatment record, which documents intact motor strength and range of motion throughout the extremities, normal sensation, negative straight leg raising test bilaterally, intact reflexes, generally normal gait, and normal neurologic findings. (T at 118, 529, 621, 625, 641, 665, 703, 706, 714-15, 756, 793, 802, 808, 816, 820, 831, 1257, 1263, 1335, 1343, 1375, 1378, 1445).

 The ALJ's assessment is also supported by other medical opinion evidence in the record.

Dr. S. Padmaraju, a non-examining State Agency review physician, reviewed the record and concluded that Plaintiff could sit for about 6 hours in an 8-hour workday. (T at 167).  This finding was affirmed by Dr. R. Dickerson, another State Agency review physician. (T at 195). *See Distefano v. Berryhill*, 363 F. Supp. 3d 453, 474 (S.D.N.Y. 2019)("'[S]tate

agency physicians are qualified as experts in the evaluation of medical issues in disability claims,' and as such, 'their opinions may constitute substantial evidence if they are consistent with the record as a whole.'")(quoting *Leach ex rel. Murray v. Barnhart,* 02 Civ. 3561, 2004 U.S. Dist. LEXIS 668, at *26 (S.D.N.Y. Jan. 22, 2004)).

Regarding respiratory irritants, Plaintiff points to an apparent inconsistency in the ALJ's decision.  The ALJ seemed to adopt Dr. Aguiar's recommendation that Plaintiff avoid respiratory irritants. (T at 118, 1335). However, the RFC determination allows for occasional exposure to irritants. (T at 116).

Although the ALJ could have been more precise in addressing this issue, the Court finds no reversible error.  Both State Agency review physicians found that Plaintiff should avoid "concentrated exposure" to respiratory irritants. (T at 169, 197).  The occasional exposure limitation is thus sufficiently supported by the record. *See Trepanier v. Comm'r of SSA*, 752 Fed. Appx. 75, 79 (2d Cir. 2018)(the ALJ may reach a determination that "does not perfectly correspond with any of the opinions of medical

sources," provided the overall assessment is supported by substantial evidence and consistent with applicable law).[4]

### 2.   Mental Limitations

Dr. Arlene Broska performed a consultative psychological examination in January of 2021.  She diagnosed unspecified depressive disorder. (T at 1340).

Dr. Broska opined that Plaintiff had mild limitation regulating emotions, controlling behavior, and maintaining well-being, but found no impairment with respect to maintaining personal hygiene and appropriate attire or having awareness of normal hazards and taking appropriate precautions. (T at 1339).

There is some ambiguity in Dr. Broska's assessment.  She found that there was "evidence of psychiatric limitation [in] understanding, remembering, and applying simple or complex directions and instructions; using reason and judgment to make work-related decisions; interacting

---

[4] Plaintiff also challenges the ALJ's conclusion that her carpal tunnel syndrome was not a severe impairment.  (T at 115).  However, while Plaintiff complained of left wrist pain and had some swelling in May and August 2021 (T at 1476, 1506), treatment notes indicated no hand or finger dexterity issues. (T at 1335, 1506). Plaintiff demonstrated full grip strength bilaterally and full range of motion of the left wrist, hand, and elbow. (T at 1335, 1478). A left wrist x-ray revealed swelling, but no fracture, preserved carpal alignment, and preserved joint spaces. (T at 1518). Drs. Padmaraju and Dickerson (the State Agency review physicians) assessed no manipulative limitations. (T at 168, 196). Dr. Aguiar (the consultative examiner) did not diagnose carpal tunnel or identify any manipulative limitations. (T at 1335).

adequately with supervisors, co-workers, and the public; sustaining concentration and performing a task at a consistent pace; or sustaining an ordinary routine and regular attendance at work." (T at 1339).  However, Dr. Broska did not describe or characterize the nature of the evidence of limitation in these domains of mental functioning.

In context, it appears Dr. Broska intended to include the word "no" before the word "evidence," but omitted it.  When summarizing her overall findings, Dr. Broska noted evidence of psychiatric problems, but opined that they did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. (T at 1340).

The ALJ characterized Dr. Broksa's assessment as supporting a finding of "no more than mild work-related mental restrictions," which the ALJ found persuasive.  (T at 114).  The ALJ's overall conclusion was that Plaintiff did not have a severe mental impairment. (T at 114-15).

The Commissioner uses a "special technique" to evaluate the severity of mental impairments at step two of the sequential analysis. *See* 20 C.F.R. § 404.1520a(a).  The ALJ rates the degree of functional limitation resulting from the claimant's mental impairment(s) to determine whether the impairment(s) is/are "severe." *See id.* at § 404.1520a(d)(1).  To perform this analysis, the ALJ considers the degree of limitation in four (4) broad

functional areas – understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  If the limitation in these domains is no more than "mild," and if the evidence does not otherwise indication more than a mild limitation in the claimant's activity to perform basic work activities, then the mental impairment(s) will be considered non-severe. *See id.*

The ALJ found that Plaintiff had no more than mild limitation in any of the functional areas of mental functioning.  (T at 114).

This determination is supported by substantial evidence.  As discussed above, the ALJ reasonably read Dr. Broska's opinion as limiting no more than mild work-related mental restrictions.  Two State Agency review physicians, Dr. D'Ortono and Dr. Juriga, concluded that Plaintiff did not have a severe mental impairment, (T at 164, 192).  The ALJ also noted the lack of mental health treatment and/or mental status examinations indicating significant concerns during the period at issue. (T at 114).  Dr. Broska described Plaintiff as cooperative and demonstrating appropriate thought processes, "good" mood, appropriate affect and orientation, intact attention, concentration, and memory, and fair insight and judgment. (T at 1339).  Plaintiff was able to attend to personal care, perform household chores, spend time with family, and manage money. (T at 1339).

This is sufficient to sustain the ALJ's determination under the deferential standard of review applicable here. *See Rye v. Colvin*, No. 2:14-CV-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016); *Guerra v. Comm'r of Soc. Sec.*, No. 16-CV-991, 2018 WL 3751292, at *2 (W.D.N.Y. Aug. 7, 2018), *aff'd sub nom. Guerra v. Saul*, 778 F. App'x 75 (2d Cir. 2019).

In addition, and in the alternative, any arguable error with respect to the ALJ's step two analysis was harmless.  Even though the ALJ found Plaintiff's mental impairments non-severe, the ALJ considered, and accounted for, those impairments by limiting Plaintiff to simple and routine work in an environment where she is permitted to be off-task for 5 minutes per hour. (T at 116). *See Snyder v. Colvin*, No. 5:13-CV-585 GLS/ESH, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014)("Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error."); *see also Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013)

*C. Step Five Analysis*

At step five of the sequential analysis, the Commissioner determines whether claimant can perform work that exists in significant numbers in the

national economy.  The Commissioner bears the burden of proof at this step. *See Butts*, 416 F.3d at 103; 20 C.F.R. § 404.1560(c)(2).

In the present case, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 119-120).

In reaching this conclusion, the ALJ relied on the opinion of a vocational expert, who testified that a hypothetical claimant with the limitations set forth in the RFC determination could perform the representative occupations of addresser, microfilm document preparer, tube operator, and escort vehicle driver, which exist in significant numbers in the national economy. (T at 120, 150-55).

Plaintiff contends that the ALJ's step five analysis is flawed.  In particular, she argues that the hypothetical questions presented to the vocational expert during the administrative hearing did not include all her limitations.

This argument is a restatement of Plaintiff's other challenges to the ALJ's RFC determination and is unavailing for the reasons outlined above. *See Wavercak v. Astrue*, 420 F. App'x 91, 95 (2d Cir. 2011)("Because we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject Wavercak's vocational expert challenge.").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED; the Commissioner is GRANTED Judgment on the Pleadings; and this case is DISMISSED. The Clerk is directed to enter final judgment in favor of the Commissioner and then close the file.

Dated: January 15, 2024       _s/ Gary R. Jones_
GARY R. JONES
United States Magistrate Judge